## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **GREG MILLER,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:20-cv-00641-HCN-JCB** |
| **FLUENT HOME, LLC; FLUENT HOME LTD; VIVINT, INC.; NPEC, LLC; IVY TECHS, LLC; JACK ELBAUM; GRAHAM WOOD; TODD PEDERSEN; J. PARKER HOLLIS; KRISTI L. BETTRIDGE** | **Judge Howard C. Nielson, Jr.** |
| | **Magistrate Judge Jared C. Bennett** |
| **Defendants.** | |

District Judge Howard C. Nielson, Jr. referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[1] Defendants NPEC, LLC ("NPEC"); Fluent Home, LLC, and Fluent Home LTD (together, "Fluent Home"); Ivy Techs, LLC; Jack Elbaum ("Mr. Elbaum"); Graham Wood; J. Parker Hollis; and Kristi L. Bettridge (collectively, "NPEC Defendants") move to dismiss this action under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6),[2] and Defendants Vivint, Inc. ("Vivint") and Todd Pedersen (together, "Vivint Defendants") have filed a notice of joinder in Defendants' motion to dismiss.[3] Plaintiff Greg

---

[1] ECF No. 4.

[2] ECF No. 10.

[3] ECF No. 15. NPEC and Vivint are collectively referred to as "Defendants," unless specifically indicated otherwise.

Miller ("Mr. Miller"), who is proceeding pro se, opposes Defendants' motion.[4] The court has carefully reviewed the written memoranda submitted by the parties.[5] For the reasons set forth below, the court recommends dismissing this action.

BACKGROUND[6]

Mr. Miller's amended complaint stems from his discharge from employment with NPEC in 2012 and events arising thereafter. While employed at NPEC, Mr. Miller discovered evidence that the president of the company, Mr. Elbaum, was a convicted felon and, therefore, was prohibited from serving as an officer for a home security company. Mr. Elbaum also served as Chief Operating Officer for Vivint and Chief Executive Officer for Fluent Home. According to Mr. Miller, the organizations "fraudulently concealed" Mr. Elbaum's employment "when applying for and obtaining [their] initial Utah burglar alarm company license[s]" and consorted to defraud customers "by unlawfully placing the customers' sensitive information in the custody and control of [a] convicted felon."[7] Mr. Miller was terminated from NPEC after confronting Defendants about their "foreign and interstate scheme to defraud customers."[8] After termination of Mr. Miller's employment, NPEC filed suit against Mr. Miller in state court for fraud and Mr.

---

[4] ECF No. 17.

[5] Under DUCivR 7-1(f), the court concludes that oral argument is not necessary and, therefore, decides the motion on the written memoranda.

[6] In reciting the background for Defendants' motion to dismiss, the court assumes all the well-pleaded factual allegations in Mr. Miller's amended complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[7] ECF No. 6 at 4.

[8] *Id*. at 5.

Miller countersued for, *inter alia*, malicious prosecution and defamation ("NPEC Lawsuit").[9]
The NPEC Lawsuit was resolved through a Settlement Agreement in May 2014. In October
2014, the NPEC Lawsuit was reopened to address Mr. Miller's breaches of the Settlement
Agreement and the state court entered judgment for NPEC in the amount of $283,961.55 on
January 11, 2016. Mr. Miller did not pay the judgment.

      On August 19, 2020, NPEC obtained a writ of execution from the Clerk of Court for the
Utah Third District court to enforce payment of the judgment.[10] In accordance with Utah state
procedure, the Salt Lake County Constable issued notice that a public execution sale would be
held to raise funds in satisfaction of NPEC's money judgment. The property noticed for public
sale was Mr. Miller's right to pursue the legal claims in the case before this court. On August 26,
2020, Mr. Miller filed a motion to stay or quash the execution sale. The state court denied Mr.
Miller's motion to stay or quash the execution sale on November 9, 2020, and issued an amended
writ of execution on November 10, 2020, to proceed with the sale. Mr. Miller did not appeal this
decision. On November 13, 2020, NPEC, as the highest bidder, purchased Mr. Miller's right to
this lawsuit for $5,000 at the public execution sale. NPEC subsequently filed its Certificate of
Sale with the Utah Third District Court.[11]

---

[9] *NPEC, LLC v. Gregory Miller*, Utah Third District Court, Case No. 130905131.

[10] The writ of execution was issued for $320,358.81, the total of which is the original judgment amount together
with interest and other costs and fees.

[11] ECF No. 10-6 at 2. The Certificate of Sale states that NPEC purchased:

    [Mr. Miller's] non-exempt equitable claims, legal claims, demands, debts, rights to sue, causes of
    action, offsets, lawsuits, and/or chosen in action of any kind, nature and description including
    without limitation all non-exempt equitable claims, legal claims, demands, debts, rights to sue,
    causes of action, offsets, lawsuits, and/or chosen in action of any kind, nature or description against
    any or all of the following: (i) NPEC, LLC and any of its owners, officers, employees, contractors,

Mr. Miller initiated the instant action by filing his complaint in federal court on September 16, 2020.[12] The crux of Mr. Miller's complaint is that Defendants, working together, engaged in racketeering activity with the goals of defrauding customers and retaliating against Mr. Miller for complaining to state licensing authorities about Defendants.[13] Mr. Miller asserts claims for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 to 1968, alleging Defendants participated in a RICO enterprise through a pattern of racketeering activity. He also asserts a claim for RICO conspiracy, claims under a variety of state law causes of action based on the same conduct, and a claim for malicious prosecution.[14] Mr. Miller alleges $1,000,000 in economic damages for "lost employment income, lost business income, lost future earnings, lost property and legal fees."[15] He also alleges $1,000,000 in noneconomic damages for "pain, mental anguish, anxiety, emotional distress, and nervous shock."[16]

Defendants subsequently moved to dismiss Mr. Miller's amended complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).[17] In their motion, Defendants assert, *inter alia*,

---

or agents; (ii) Jack Elbaum; (iii) Fluent Home, LLC and any of its owners, officers, affiliated companies, parents, subsidiaries, employees, contractors, or agents; (iv) Graham Wood; (v) Kristi Bettridge; and/or (vi) Michael Best & Friedrich, LLP and any of its attorneys, employees or agents; excepting only such claims as Miller has asserted in the matter of Advice Media v. Miller.

[12] ECF No. 2.

[13] ECF No. 6 at 54, 57.

[14] *Id*. at 63-72.

[15] *Id*. at 5.

[16] *Id*.
[17] ECF No. 10.

that: (1) Mr. Miller lacks standing to bring this action because NPEC now owns his legal claims; and (2) Mr. Miller fails to state a claim upon which relief can be granted.

In response to Defendants' motion to dismiss, Mr. Miller argues NPEC forfeited its ownership of his legal claims to the United States by engaging in racketeering activity.[18] Defendants' reply reiterates that Mr. Miller lacks standing, even by his own logic: if the claims now belong to the United States, Mr. Miller has no injury and cannot pursue the instant suit.[19]

## LEGAL STANDARDS

A court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) if the plaintiff cannot satisfy the requirements of Article III standing: (1) injury-in-fact, (2) causation, and (3) redressability. *Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012). The party seeking federal jurisdiction over his or her claim "has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (quotations and citation omitted). In resolving a Rule 12(b)(1) motion, the court may consider evidence outside of the pleading to determine whether a plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the

---

[18] ECF No. 17 at 3-4.

[19] ECF No. 18 at 2-3.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plaintiff

must allege sufficient facts to show "more than a sheer possibility that a defendant has acted

unlawfully." *Id.* "The court's function on a Rule 12(b)(6) motion is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's complaint

alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948

F.2d 1562, 1565 (10th Cir. 1991).

   For purposes of a motion to dismiss, the court must accept all factual allegations in the

complaint as true and draw all inferences in the plaintiff's favor. *Leverington v. City of Colo.

Springs*, 643 F.3d 719, 723 (10th Cir. 2011). However, the court need not credit "mere

conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal,* 556

U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "The complaint must give the court reason to

believe that this plaintiff has reasonable likelihood of mustering factual support for these

claims." *Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis

omitted). To decide the motion, the court may consider the facts asserted in the complaint

together with documents attached to the complaint as exhibits, and any documents incorporated

in the complaint by reference. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

   In analyzing Defendants' motion to dismiss, the court is mindful that Mr. Miller is

proceeding pro se and that "[a] pro se litigant's pleadings are to be construed liberally and held to

a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d

1106, 1110 (10th Cir. 1991); *see also, e.g., Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th

Cir. 2003). That said, Mr. Miller's pro se status does not discharge him from complying with the

court's rules and procedures. The court will not assume an advocacy role on Mr. Miller's behalf,

*Bellmon*, 935 F.2d at 1110, and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

**ANALYSIS**

Mr. Miller's amended complaint asserts three separate causes of action for RICO violations of subsections (a), (c), and (d) of 18 U.S.C. § 1962; brought pursuant to 18 U.S.C. § 1694(c); and state-law causes of action for pattern of unlawful activity and malicious prosecution. However, as shown below: (I) Mr. Miller lacks standing to bring the RICO claims, which deprives this court of subject matter jurisdiction; (II) Mr. Miller's complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6); (III) because his federal claims are dismissed, the court should decline to exercise supplemental jurisdiction over his state-law claims; and (IV) providing Mr. Miller with an opportunity to amend his complaint would be futile. Therefore, this action should be dismissed.

## I.   MR. MILLER LACKS STANDING TO BRING THIS ACTION.

Mr. Miller lacks standing. The federal judicial power extends only to cases and controversies. U.S. Const. Art. III.  For a case or controversy to be justiciable, it must involve "questions presented in an adversary context and . . . capable of resolution through the judicial process." *Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 516 (2007) (quotations and citation omitted). The three requirements of Article III standing—injury in fact, causation, and redressability—ensure that the parties to any litigation have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends for illumination." *Id*. at 517

(quotations and citation omitted). Plaintiffs bear the burden of meeting these requirements. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Each requirement "must be established before a federal court can review the merits of the case." *Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 902 (10th Cir. 2012).

Injury in fact is the "[f]irst and foremost of standing's three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish an injury in fact, the plaintiff must demonstrate that the injury is "concrete and particularized," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and is "an invasion of a legally protected interest." *Spokeo,* 136 S. Ct. at 1548 (citation omitted). "[A] plaintiff's standing is contingent upon the entitlement to enforce an asserted right." *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009). "If, during the pendency of the case, circumstances change such that the plaintiff's legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009).

The court concludes that Mr. Miller lacks standing to bring this lawsuit because he has not suffered an injury to a legally protected interest. NPEC properly acquired Mr. Miller's legal claims, rights to sue, and lawsuits against the NPEC Defendants here through a writ of execution. This extinguished Mr. Miller's legal interest in the instant lawsuit and divested him of standing. In other words, when NPEC purchased Mr. Miller's legal claims at the public auction sale for $5,000, NPEC stepped into the shoes of Mr. Miller and became the claimant in this suit. *RMA Ventures Cal.,* 576 F.3d at 1075 (finding dismissal appropriate where defendants purchased the plaintiff's legal right to sue and deprived plaintiff of standing).

Mr. Miller never disputes that NPEC acquired ownership of his claims. Instead, he argues that NPEC forfeited the recently purchased claims to the United States by engaging in racketeering activity, and therefore the United States is the legal owner of his claims.[20] Such argument fails for two reasons. First, Mr. Miller offers no legal authority for this supposition, and the court is aware of none to support it. Second, the argument is inapt. Even if NPEC forfeited the right to sue to the United States, it would not change the fact that Mr. Miller is without legal right to sue and therefore lacks standing.

Although the Vivint Defendants are not expressly named in the writ, the same standing analysis applies. The writ entitled the purchaser of Mr. Miller's "lawsuits[] and/or chose in action of any kind, nature and description."[21] NPEC alone, as the purchaser of Mr. Miller's causes of action, may enforce the claims.[22] Because NPEC's purchase cut off Mr. Miller's right to pursue the claims in this suit, Mr. Miller lacks a personal interest in this action and, therefore, cannot show an injury in fact.[23] Because Mr. Miller cannot show injury in fact, he lacks standing, which deprives this court of subject matter jurisdiction. Accordingly, this action should be dismissed.

---

[20] ECF No. 17 at 3-4.

[21] ECF No. 10-6 at 2

[22] Even if Mr. Miller had an injury-in-fact, he has failed to show how Defendants' conduct caused his alleged injuries. Tracing his employment troubles, divorce, and loss of his home to any of Defendants' actions requires an impermissible "inferential leap." *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1225 (10th Cir. 2008). Because Mr. Miller cannot demonstrate causation, he lacks standing on this ground as well.

[23] Mr. Miller does not challenge the validity of the writ of execution. Notwithstanding, any such attempt would be futile because "a writ of execution, once issued, cannot be collaterally attacked." *RMA Ventures Cal.*, 576 F.3d at 1076 (quotations and citation omitted).

## II.    MR. MILLER FAILS TO SUFFICIENTLY PLEAD HIS RICO CLAIMS.

Defendants alternatively argue that, even if Mr. Miller has standing to bring his claims, his RICO claims fail under Fed. R. Civ. P. 12(b)(6) because the amended complaint does not adequately allege any RICO predicate acts. Having carefully reviewed Mr. Miller's voluminous amended complaint, the court agrees with Defendants that it fails to state plausible RICO claims.

Mr. Miller's RICO claims are brought under 18 U.S.C. § 1962(a), (c), and (d). Section 1962(a) prohibits the acquisition of legitimate businesses through racketeering activity or proceeds from racketeering activities. Section 1962(c) prohibits conducting the affairs of an enterprise engaged in racketeering activity. Section 1962(d) prohibits conspiring to violate sections 1962(a), (b), or (c). Each of the RICO statute's subsections require a showing of a "pattern of racketeering activity." 18 U.S.C. § 1962(a)–(d). Specifically, a RICO plaintiff bringing an action pursuant to § 1964(c) must adequately plead at least two predicate acts of racketeering. 18 U.S.C. § 1961(5); *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016).

Mr. Miller's RICO claims fail on two grounds. First, he fails to sufficiently allege even a single predicate act. Second, he fails to plead a "meeting of the minds" that would support his conspiracy allegation. Mr. Miller asserts Defendants committed the predicate acts of mail and wire fraud. He claims Defendants concocted a scheme to "intentionally defraud[]" customers by "placing [their] sensitive information in the custody and control of [a] convicted felon"[24] and executed this scheme by transmitting customer information both electronically and through the

---

[24] ECF No. 6 at 4.

mail.[25] But Mr. Miller does little more than restate the elements of mail and wire fraud. Mr.

Miller also asserts that Defendants engaged in witness tampering which is a predicate act listed

in section 1961. Two or more predicate acts are required to constitute a pattern of racketeering

activity; thus, even if Mr. Miller sufficiently pled tampering as a predicate act, his RICO claims

fail. However, he has not alleged facts that, taken as true, plausibly support a tampering claim.

The statute Mr. Miller cites, 18 U.S.C. § 1512(b)(2)(B), prohibits threatening or intimidating a

person in an effort to "cause or induce" that person to "alter, destroy, mutilate, or conceal an

object with intent to impair the object's integrity or availability for use in an official proceeding."

In support of his claim that Defendants' conduct meets the elements of section 1512(b)(2)(B),

Mr. Miller points to a witness's "inconsistent testimony" about a cell phone during his state

criminal trial. Mr. Miller's allegation that this inconsistency "implies" tampering does not

support an inference that Defendants committed even this single predicate act. Because Mr.

Miller has not sufficiently pled facts to support at least two predicate acts, his RICO claims fail.

To the extent Mr. Miller seeks to allege a conspiracy, he must allege that Defendants

acted jointly in concert and that some overt act was done in furtherance of the conspiracy which

resulted in Mr. Miller's deprivation of a constitutional right. *Langley v. Adams County*, 987 F.2d

1473, 1481 (10th Cir. 1993). Mere conclusory allegations of a conspiracy do not demonstrate the

"meeting of the minds" element. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir.

1994); *see e.g., Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (conclusory

statements are insufficient to allege a claim of conspiracy). Because the amended complaint fails

---

[25] *Id.* at 17–18.

to plausibly allege a "meeting of the minds" among the parties, Mr. Miller fails to allege a RICO conspiracy. [26]

In sum, despite its verbosity, Mr. Miller's amended complaint contains few factual allegations. Instead, Mr. Miller asserts in a conclusory manner that Defendants violated RICO by committing mail and wire fraud to conceal a purported data security breach from Vivint and Fluent Home customers, and by engaging in evidence or witness tampering. None of these allegations plausibly establish any of the predicate criminal acts outlined in section 1961. Instead, Mr. Miller's amended complaint simply cobbles together a number of unrelated discrete acts and lacks sufficient allegations to show the coordination or common purpose necessary to plausibly state a pattern of racketeering. Therefore, even if he has standing, he has failed to state a claim on which relief can be granted.

## III.    DECLINE TO EXERCISE SUPPLEMENTAL JURSIDICTION

"Pursuant to 28 U.S.C. § 1367(a), federal courts may exercise supplemental jurisdiction over claims outside their original jurisdiction if those claims are part of the same Article III case or controversy as claims over which the court has original jurisdiction." *Brock v. Herbert*, No. 2:09-CV-1118, 2012 WL 1029355, at *2 (D. Utah Mar. 26, 2012). However, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction. When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any

---

[26] Additionally, the allegations of mail and wire fraud fall far short of meeting the heightened pleading standard of Fed. R. Civ. P. 9(b). A complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Mr. Miller's amended complaint contains no such statements and therefore fails to meet Rule 9(b)'s specificity requirement.

remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quotations and citations omitted).

Mr. Miller's federal claims should be dismissed. Because Mr. Miller's claims for malicious prosecution and violations of the Pattern of Unlawful Activity Act are both based upon state law, the court should decline to exercise supplemental jurisdiction over those claims. Accordingly, they should be dismissed without prejudice. *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'" (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988))).

## IV.   FUTILITY OF AMENDMENT

Although the court has concluded that Mr. Miller's amended complaint should be dismissed, the court recognizes that it may dismiss a pro se plaintiff's complaint for failure to state a claim "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (quotations and citation omitted). Given the foregoing analysis, and the fact that Mr. Miller has already been provided with an opportunity to amend his complaint, the court has determined that Mr. Miller could not provide any additional, plausible allegations that would save any of his claims from dismissal. Accordingly, the court concludes that it would be futile to provide Mr. Miller with an opportunity to amend his complaint.

### RECOMMENDATION

Based on the foregoing analysis, IT IS HEREBY RECOMMENDED that:

13

1.      Defendants' Motion to Dismiss[27] be GRANTED.

2.      Mr. Miller's federal claims in this action be DISMISSED WITH PREJUDICE.

3.      Mr. Miller's state-law claims in this action be DISMISSED WITHOUT
        PREJUDICE.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 18th day of March 2021.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge

---

[27] ECF No. 10.